UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADMINISTRATOR AD PROSEQUENDUM FOR THE ESTATE OF WILLIAMS SARAVIA,**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**BAYONNE DRY DOCK & REPAIR CORP., PATRIOT CONTRACT SERVICES, LLC, JOHN and JANE DOES 1-10 (fictitious unidentified individuals) and ABC CORPORATIONS 1-10 (fictitious individuals, corporations or other business entities presently unidentifiable)**<br><br>       **Defendants.** | Civ. No. 2:20-CV-09174 (KM)(JBC)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

  Before the Court is the motion (DE 5) of the Plaintiff, Administrator ad Prosequendum for the Estate of Williams Saravia, to remand this action to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). Defendant Bayonne Dry Dock & Repair Corp. ("Bayonne") filed a response (DE 8) which Defendant Patriot Contract Services, LLC ("Patriot") joined (DE 14), and to which Plaintiff replied (DE 15). For the reasons described below, the motion to remand is **GRANTED**.

 **I. Background**

  Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Hudson County on June 2, 2020. (DE 1, Ex. A). The allegations relate to an accident on board a docked ship, the USNS RED CLOUD (the "Vessel"), that ultimately led to the death of Williams Saravia, Plaintiff's decedent. (*Id.* at 3). Defendant Patriot was party to a ship alteration contract (the "Navy Contract") with the United States Navy to perform alterations on the Vessel. (*Id.*

1

at 2). It entered into a subcontract with Defendant Bayonne, which owned and operated the ship repair yard, to perform some of the repair services. (*Id.*). Bayonne further contracted with an entity known as 5 Season LSB Corp. to perform painting services on the Vessel. (*Id.*). 5 Season LSB Corp. employed Saravia, who was working on the Vessel at the time of his death. (*Id.* at 2-3). Plaintiff alleges that Patriot and Bayonne breached their duty of care by providing an unsafe working environment. (*Id.* at 3). Plaintiff brings two negligence claims and a claim under 33 U.S.C. § 905(b), the Longshore & Harbor Workers Compensation Act. (*Id.* at 2-5).

Bayonne removed the matter to this Court on July 21, 2020. (DE 1). The basis for removal is 28 U.S.C. § 1442(a)(1) (the "Officer Removal Statute"), which provides that removal is appropriate when it involves an officer of the United States acting under color of office. Plaintiff, in its motion to remand, argues that despite the Officer Removal Statute, Bayonne has not met the requirements for removal of a tort case involving defense contractors.

## II. Discussion

In opposing the motion to remand, Bayonne argues that it satisfies the elements of the Officer Removal Statute, and, in the alternative, that the case falls under the Court's admiralty jurisdiction.[1]

### A. Removal Statute

The relevant portion of the Officer Removal Statute provides:

> (a) A civil action … that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

---

[1] Neither the removal petition nor the briefs raise the issue of federal-question removal based on the tort claim under 33 U.S.C. § 905(b), the Longshore & Harbor Workers Compensation Act. I therefore do not consider it. The omission was likely purposeful, because such a claim does not necessarily present a federal question. "[T]he presentation of a claim under § 905(b) does not automatically raise a federal question cognizable under 28 U.S.C. § 1331. The nature of the underlying claim must be considered, for that claim determines whether there is federal subject matter jurisdiction." *Richendollar v. Diamond M Drilling Co., Inc.*, 784 F. 2d 580, 583 (5th Cir. 1986).

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

"[The Officer Removal Statute] is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015) (quotation and citation omitted). Under this section, "a colorable federal defense is sufficient to confer federal jurisdiction." *Id.*

The Third Circuit draws a distinction between removal under § 1441, which is "to be strictly construed against removal and all doubts should be resolved in favor of remand," *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quotation and citation omitted), and the Officer Removal Statute, which is to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *See In re Commonwealth*, 790 F.3d at 467. Still, "[that] broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

In order to establish a proper basis for removal under the Officer Removal Statute, the removing party must show that "(1) it is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [removing party's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against it are 'for, or relating to' an act under color of federal office; and (4) it raises a colorable federal defense to the [plaintiff's] claims." *In re Commonwealth*, 790 F.3d at 467.

3

Plaintiff does not dispute that Bayonne qualifies as a "person" within the meaning of the statute. Nor does it dispute that Bayonne, as a government subcontractor, was "acting under" the United States. Instead, it focuses on the connection between Bayonne's tortious acts and its status as a federal contractor and argues that Bayonne has not met the third and fourth elements.

The third element sets a relatively low bar. As the Third Circuit explained, the Officer Removal Statute was amended in 2011 to broaden its reach. Prior to the amendment, the tortious act needed to have been prompted by what the federal government instructed the actor to do. After the amendment, "it is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *In re Commonwealth*, 790 F.3d at 471.

Prior to analyzing this element, it is necessary to unpack the relationship between the Defendants and the Plaintiff, based on information provided in affidavits submitted by Bayonne. Originally, the United States Navy entered into the Navy Contract with Patriot.[2] (DE 14 at 1). Patriot solicited bids for a project to repair and make alterations to the Vessel. (DE 14 ¶ 4). Bayonne's bid was accepted. It signed Patriot's offer for proposals (DE 9-4 at 34) and issued a purchase order (DE 9-3). Next, Bayonne entered into a subcontract with 5 Season LSB Corp., delegating to it the task of painting certain areas of the Vessel. (DE. 9-6). 5 Season LSB Corp. employed the Plaintiff's decedent, Saravia.

---

[2]   This contract has not been presented to the Court. The representation that the Navy and Patriot entered into a contract, made in a letter submitted by Patriot, does not seem to be disputed. Bayonne's owner submitted an affidavit which certified, among other things, that Patriot, "on behalf of the United States government, accepted a bid from [Bayonne]." (DE 10 ¶ 4). Bayonne paints itself as being involved in this contract: "[Bayonne] and Patriot, on behalf of the United States government, entered into a contract pursuant to which [Bayonne] is making repairs and alterations to the United States Navy vessel USNS RED CLOUD." (DE 8 at 2). However, it does not appear that Bayonne was a party to this contract, or even mentioned therein.

4

The allegedly tortious act here was failure to maintain a safe workplace. Keeping a safe workplace is associated with performing the repairs authorized by the various contracts and subcontracts that ultimately flow from the federal government. Plaintiff's involvement with Bayonne is directly related to Bayonne's agreement with Patriot, which in turn is directly related to the Navy Contract.

Plaintiff argues that his claims are confined to failure to provide a safe means of ingress and egress to the work area, whereas Bayonne's contracts relate separately to the "performance and completion of the work itself." (DE 15 at 8). That is too subtle of a distinction. Keeping a safe means of ingress and egress is connected to the broader project of repairing the ship. A determination that Defendants' actions are associated with the Navy Contract is in keeping with the Third Circuit's observations about the broad reach of this element. Accordingly, I find that this element is satisfied.

Finally, Plaintiff argues that Bayonne has not raised a colorable federal defense. The argument has two parts: (1) Defendants did not include any federal defense in their answers and (2) Bayonne does not satisfy the requirements of the government contractor defense it now proffers in its opposition motion.

As to the first point, Plaintiff does not cite any authority requiring that the defense be "raised" formally in the answer. In analyzing whether a colorable defense exists, courts have considered whether the defendant has provided sufficient facts in its notice of removal or supporting affidavits. *See Papp v. Fore-Kast Sales Co., Inc.*, 842 F. 3d 805, 814 (3d Cir. 2016) ("Taking the undisputed facts from the notice of removal, including [a declaration], as true, [defendant] has stated sufficient facts to make out a colorable defense."); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) (considering affidavits submitted in support of removal).

As to the second point, Bayonne raises, principally in its opposition brief but also obliquely in its notice of removal, the so-called government contractor

5

defense. It argues that it satisfies the elements of the test first set out in *Boyle v. United Techs. Corp.* 487 U.S. 500 (1988). Plaintiff agrees with Bayonne that the *Boyle* test could theoretically apply, but denies that Bayonne meets its elements.

At the removal stage, Bayonne need only show that its defense is colorable, "which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F. 3d at 815 (quoting *Colorable Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

The *Boyle* test is typically applied in products liability cases. Under the test, "a federal contractor cannot be held liable for a state tort if, in the context of the work at issue, '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States'" *Papp*, 842 F. 3d at 814 (quoting *Boyle*, 487 U.S. at 512).

Bayonne provides evidence, through its affidavits, that it could satisfy all three elements. The argument as to each one, however, suffers from the same flaw—Bayonne never interacted with the government at all. Instead, it was Patriot which approved reasonably precise specifications, Patriot which accepted the repairs as conforming to its specifications, and Patriot which Bayonne advised of all safety issues of which it had knowledge.

In Bayonne's view, Patriot is effectively a stand-in for the United States by virtue of its Navy Contract. But Bayonne has not cited any authority holding that *Boyle*'s requirement of government involvement extends to those "acting under" the government. Each case Bayonne cites involved the removing defendant's interacting directly with the government, not a middleman. *Carley*, 991 F. 2d 1117 at 1118 (United States General Services Administration approved specifications and examined defendant's product); *Cuomo v. Crane Co.*, 771 F. 3d 113, 116 (2d Cir. 2014) (United States Navy provided detailed

6

specifications for the valves produced by the defendant); *Bennett v. MIS Corp.*, 607 F. 3d 1076, 1082 (6th Cir. 2010) (Federal Aviation Administration directly hired multiple mold remediation firms); *Tate v. Boeing Helicopters*, 55 F. 3d 1150, 1155 (6th Cir. 1995) (United States Army closely scrutinized the defendants' development of the product); *Harduvel v. General Dynamics Corp.*, 878 F. 2d 1311, 1320 (11th Cir. 1989) (United States Air Force reviewed and approved defendant's designs); *Wilson v. CB&I Federal Services, LLC*, No. 17-376, 2018 WL 1279015, *2 (M.D. La. Feb. 21, 2018), *report approved* 2018 WL 1278428 (FEMA contracted with defendant); *La. United Bus. Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F. Supp. 3d 852 (W.D. La. 2015) (United States Army approved specifications of removing defendant); *Estate of Ware ex re. Boyer v. Hosp. of Univ. of Pa.*, 73 F. Supp. 3d 519, 534-537 (E.D. Pa. 2014) (NASA acted in concert with removing defendant).

The next step is to assume *arguendo* that a government contractor defense is available to a sub-contractor of an entity which has contracted with the government. Even if that were so, I could not find that Bayonne has made a colorable showing that the approval of its specifications or actions came directly from the government. At best, provisions from the Navy Contract, which has not been provided, were incorporated by reference into Bayonne's agreement with Patriot. (DE 9-3). But merely complying with contractual specifications initially approved by the government is insufficient. Courts applying *Boyle* analyze just how closely the government supervises the contractor's decision-making process. *See, e.g., Papp*, 842 F. 3d at 814 ("As to the first element of the *Boyle* test, Boeing asserted that the government exercised complete control over any markings or labels on [Boeing] aircraft or aircraft components, that in-person meetings occurred between Boeing and government personnel where warnings were discussed, and that the contents, including any warnings, of any technical manuals … were directed, reviewed, and approved by the government.") (quotations omitted); *In re Agent Orange Prod. Liability Litig.*, 517 F. 3d 76, 91 (2d Cir. 2008) ("The government exercises

adequate discretion over the contract specifications to invoke the defense if it independently and meaningfully reviews the specifications such that the government remains the agent of decision.") (quotation omitted); *Trevino v. General Dynamic Corp.*, 865 F. 2d 1474, 1480 (5th Cir. 1989) ("We hold that 'approval' under the *Boyle* defense requires more than a rubber stamp.").[3]

There is no evidence that any entity other than Patriot (which is not the government) exercised *any* supervisory discretion over the project. Because Bayonne has not provided evidence that the government approved its specifications or was in any way involved in its actions, its invocation of the government contractor defense is not colorable on this record.

Accordingly, because the Defendants have failed to raise a colorable federal defense, they have not met the elements required for removal pursuant to the Officer Removal Statute. Unless there is another basis for this court to retain the case, remand will be required.

### B. Admiralty Jurisdiction

Bayonne also argues that it is entitled to a federal forum by virtue of this Court's admiralty jurisdiction. Saravia's injury and death indisputably occurred on a vessel that was in dry-dock, and a vessel in dry-dock is nevertheless considered to be in "navigable waters" for the purposes of jurisdiction. Plaintiff responds, however, that federal jurisdiction here would violate the saving-to-suitors clause, dating back to the Judiciary Act of 1789, which guarantees a state court forum for maritime claims sounding in common law.

The relevant jurisdictional statute provides as follows:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

---

[3] The focus on discretion in these cases all reflect the Third Circuit's observation that "[t]he Court in *Boyle* premised the government contractor defense on the discretionary function exception of the [Federal Tort Claims Act] . . . ." *Carley v. Wheeled Coach*, 991 F. 2d 1117, 1123 (3d Cir. 1993).

28 U.S.C. § 1333(1) (emphasis added).

Plaintiff follows the history of the saving-to-suitors clause, 28 U.S.C. § 1333(1), from the first Congress of the United States, through the nineteenth century, and up to the present day. Judge Cooper, writing for this Court, outlined the relevance of the clause as it relates to a motion to remand in *Auerbach v. Tow Boat U.S.*, 303 F. Supp. 2d 538 (D.N.J. 2004).

Judge Cooper observed that admiralty claims "do not arise under the federal constitution, treaties, or laws, and cannot be removed freely to federal court . . . ." *Auerbach*, 303 F. Supp. 2d at 542 (citing *Romero v. Int'l Term. Operating Co.*, 358 U.S. 354, 371-72 (1959)). "It is the 'unquestioned aim' of the saving-to-suitors clause to preserve the concurrent jurisdiction of state courts in admiralty actions." *Id.* (quoting *Romero*, 358 U.S. at 372).

Observing the tension between guaranteed "concurrent" jurisdiction and a right to removal, in *Romero*, "the Supreme Court explained that permitting the unfettered removal of admiralty cases to federal courts 'would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters.'" *Sea-Land Service, Inc. v. J&W Import/Export, Inc.*, 976 F. Supp. 327, 330 (D.N.J. 1997) (quoting *Romero*, 358 U.S. at 372). "In other words, admiralty, in and of itself, does not create federal question jurisdiction so that a claim filed in state court can be removed to a district court." *Id.* at 329-330

I consider two exceptions, but find them inapplicable.

First, the saving-to-suitors clause operates only as to actions *in personam*, not *in rem*:

> "A state-court plaintiff—the 'suitor'—can be 'saved' from removal only in an *in personam* admiralty action. An *in personam* action lists a person or an association as the defendant and seeks to adjudicate the interests of specific parties only. In contrast, an *in rem* proceeding is within the exclusive jurisdiction of the federal courts. An *in rem* proceeding treats a vessel as being the offender, names the vessel as a defendant, and seeks to adjudicate the interests of the world at large because the defendant is a *res*.

9

*Id.* (internal citations omitted). This action, like the action in *Auerbach*, is an *in personam* action, directed against Bayonne and Patriot, not against the vessel where the accident occurred. *Cf. id.* ("This is an *in personam* action because it is against two associations . . . and not against a vessel.") (citing *Madruga v. Super. Ct.*, 346 U.S. 556, 561 (1954)).

Second, the saving-to-suitors clause will not defeat removal of an admiralty case where there is some other basis for subject matter jurisdiction—for example, complete diversity among the parties. *See Auerbach* at 543 ("A plaintiff also can be saved only if the action is not otherwise removable."). But, as discussed above, Bayonne cannot remove this action based on the Officer Removal Statute, and has not presented any other valid basis for removal.

Accordingly, Plaintiff's suit is "saved" by the saving-to-suitors clause from removal on the basis of admiralty jurisdiction.

### III. Conclusion

Because neither the Officer Removal Statute nor admiralty jurisdiction entitles Bayonne to a federal forum for this action, Plaintiffs' motion to remand is granted. An appropriate Order accompanies this Opinion.

Dated: October 2, 2020

/s/ Kevin McNulty
_____
**HON. KEVIN MCNULTY, U.S.D.J.**